Laura **SAUKSTELIS**, et al.,
**Plaintiffs–Appellants,**

v.

**CITY OF CHICAGO,**
**Defendant–Appellee.**

No. 90–3258.

United States Court of Appeals,
Seventh Circuit.

Argued April 8, 1991.

Decided May 16, 1991.

Rehearing Denied June 21, 1991.

James C. Reho and Michael B. Lebman, Chicago, Ill., for plaintiffs-appellants.

Kelly R. Welsh, Asst. Corp. Counsel, Office of the Corp. Counsel, Lawrence Rosenthal, Deputy Corp. Counsel, Brian Trubitt, Office of the Corp. Counsel, Appeals Div., David Rubman and Stanley Berman, Office of the Corp. Counsel, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Collecting fines for parking in forbidden zones and like offenses is hard to do. The fines are small individually but large in the aggregate. Chicago tried private collection agencies, an experiment forged in bribery, *United States v. Davis*, 890 F.2d 1373 (7th Cir.1989), and tempered in litigation, *Horn v. Chicago*, 860 F.2d 700 (7th Cir.1988). Dunning letters did not work very well. Chicago tried partial amnesties, but these work only when unexpected, and so cannot be repeated. (If drivers expect deep discounts during periodic amnesties, they will park where they please, put the tickets in the glove box, and wait for the City to capitulate.) More recently Chicago induced the state legislature to threaten the suspension of scofflaws' drivers' licenses; it has begun treating tickets as administrative (rather than criminal) complaints on which it follows up aggressively. Ill.Rev. Stat. ch. 95½ ¶ 11–208.3 (1989); Chicago Municipal Code § 9–100–010 (1990). It remains to be seen whether the new system will best its predecessors' records.

One recent addition to Chicago's arsenal is the Denver boot, named after the city where it was first used—and first declared unconstitutional. *Patterson v. Cronin*, 650 P.2d 531 (Colo.1982). The boot is a huge clamp applied to a wheel of a car. No car can move with the clamp attached. It is sturdy enough to resist determined efforts by drivers to free their vehicles from its embrace. Joining Denver, Los Angeles, San Francisco, and the District of Columbia, Chicago decided to give drivers the boot to make them pay attention to parking tickets.

The Denver boot is a form of pre-trial attachment—in both senses. To rid a car of the boot the owner must pay a booting fee and take one of these options: (a) pay the tickets in full; (b) file appearances in the Circuit Court of Cook County contesting the tickets; or (c) post collateral for half of the value of the tickets (up to $500) and promise to file appearances within 21 days. Chicago Municipal Code § 9–60–010(e). This sequence creates a constitutional difficulty, adverted to in *Sutton v. Milwaukee*, 672 F.2d 644, 648 (7th Cir.1982), and fatal in *Patterson*. The due process clause of the fourteenth amendment requires notice and an opportunity for a hearing before the government may deprive a person of property. An auto is property, and immobilization is a form of deprivation. *Sutton* holds that towing without prior notice is proper because the risk of error is small and the governmental need great: the car may block essential access. We reserved the question whether

a city could use towing to collect revenues, divorced from any interest in keeping the streets clear. The Denver boot freezes the car in place, which does not promote the flow of traffic. Its only use is to induce people to cough up money. Plaintiffs are motorists with lots of outstanding tickets; some have been booted, and others claim to fear imminent booting. *Sutton* hands them an issue.

■ They do not seize it. Indeed they do not cite *Sutton*, or *Patterson*. Perhaps plaintiffs acknowledge the inevitable. Attachments are problematic only if the seizure precedes the opportunity for hearing. *Pinsky v. Duncan*, 898 F.2d 852 (2d Cir.), cert. granted under the name *Connecticut v. Doehr*, — U.S. —, 111 S.Ct. 42, 112 L.Ed.2d 18 (1990) (argued Jan. 7, 1991). Chicago offers hearings, hearings, and more hearings. The parking ticket is itself a notice, addressed to the owner of the car and offering the opportunity for a hearing. At the time this case began, the ticket was also a complaint, filed in the Circuit Court of Cook County. (Today the ticket starts an administrative proceeding rather than a suit.) Under both judicial and administrative systems, the City follows the ticket with several notices to the owner of the vehicle at the address reflected in the state's registration records. Ill.Rev.Stat. ch. 95½ ¶ 11–208.3(b)(3). An owner who accumulates 10 tickets that have been neither paid nor contested receives a new notice, threatening the boot unless within 21 days he pays the fines, files an appearance contesting them, or applies for an administrative hearing concerning the tickets and the propriety of booting. If the owner does not respond within the 21 days, Chicago puts the car on the list eligible for booting. Once the car has been booted, Chicago offers the owner still more hearings. *Id.* at ¶ 11–208.3(c)(4). This cascade of notices and opportunities for hearing is quite sufficient under the due process clause. Mail to the registered owner of the car, at the address in the state's files—an

address the owner is supposed to keep current—is reasonably calculated to produce actual knowledge. *Ma v. Continental Bank N.A.*, 905 F.2d 1073, 1076 (7th Cir. 1990); *Virginia Lime Co. v. Craigsville Distributing Co.*, 670 F.2d 1366 (4th Cir. 1982). Repeated notices are almost certain to do so. An owner who ignores 10 tickets together with their follow-up notices and also ignores the 21–day warning of eligibility for booting is in no position to insist that the City has put action ahead of dialog.

■ Plaintiffs' argument is not procedural but substantive due process. This doctrine with an odd appellation ("substantive process?" *) and a checkered history once allowed courts to review the wisdom of state laws. They seized the opportunity to invalidate whatever struck them as unwise. E.g., *Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). Those days have passed, at least when the subject is economic regulation. *North Dakota Board of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). Booting is a form of economic regulation. Although in Los Angeles the loss of one's car may be the functional equivalent of imprisonment, in Chicago the owner of a booted car can rent another one or resort to taxis or public transportation. Expenses of substitutes are a far cry from loss of liberty.

Outside the realm of personal liberties, substantive due process may be a misnomer for the enforcement of rights expressly established in the Constitution and applied to the states through the fourteenth amendment. *Schroeder v. Chicago*, 927 F.2d 957, 961 (7th Cir.1991). Plaintiffs do not identify any constitutional rule that booting offends; loud cries of "arbitrariness" do not make up for that lack. It does no good to relabel the attack as a claim under the equal protection clause. That provision, too, allows states great lati-

---

* "[T]here is simply no avoiding the fact that the word that follows 'due' is 'process.' ... Familiarity breeds inattention, and we apparently need periodic reminding that 'substantive due process' is a contradiction in terms—sort of like 'green pastel redness.'" John Hart Ely, *Democracy and Distrust* 18 (1980).

tude in regulating the economy, provided the decision is not wacky. Courts bend over backward to explain why even the strangest rules are not *that* far gone. E.g., *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Pontarelli Limousine, Inc. v. Chicago*, 929 F.2d 339 (7th Cir.1991). It is not loony to distinguish those with fewer than 10 tickets from those who have accumulated 10 or more, and to conclude that the threat (and use) of the boot will prod owners to pay attention to tickets. It is certainly permissible for the government to induce them to do so. Self-interest concentrates the mind.

■ Trying desperately to make Chicago's program look "arbitrary", plaintiffs complain that the boot is designed to induce them to file appearances in state court. That is silly, they insist, because under state law only named parties need appear. Tickets do not name the owners. They contain blanks for the owner's name and address, but the police do not fill these blanks. Instead they record the car's license plate number and trust the City's computers to look up the name and address. The ticket is the "complaint" filed in court (now the agency). Because their names are not on the tickets, plaintiffs insist that they are not parties. Surely it is arbitrary to force non-parties to file appearances, they conclude.

To the extent plaintiffs say that Chicago's method of commencing lawsuits violates state law, they should present their claims to state court. Federal courts do not enforce state law by characterizing violations of state law as offenses against the Constitution. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 202, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989); *Archie v. Racine*, 847 F.2d 1211, 1215–18 (7th Cir.1988) (in banc); *Dawson v. Milwaukee Housing Authority*, 930 F.2d 1283, 1286 (7th Cir.1991). If we put state law aside, plaintiffs fare no better. The claim that they need not respond to tickets that do not contain their names is about as powerful as tax protesters' asser-

tion that wages are not income because depreciation of the body, a wasting asset expended to earn the money, exactly offsets the wage. There is a glint of sense in it, but this glimmer bears no relation to the Constitution. Parking tickets effectively say: "Chicago, Plaintiff, versus Owner of the vehicle with License No. xxxx, Defendant." That identifies the parties to the suit even better than a name does. Only one person matches a given license plate, while there are many "John Smiths". A name is just a way of identifying a person; the name and the person are not a joint "thing". A license number uniquely identifies the person. And Chicago mails notices directly to that person, in his own name. Nothing in the due process clause compels a busy police officer to look up the name of the registered owner before plastering the ticket to the windshield.

Formally, the question on this appeal is whether the district judge abused her discretion in denying the plaintiffs' motion for a preliminary injunction. She did not. For the reasons we have given, this case is going about as far as a booted car. It should be immobilized—permanently. We therefore remand the case with instructions to enter judgment for the City without further ado. See *Chicago Observer, Inc. v. Chicago*, 929 F.2d 325, 329 (7th Cir.1991).

AFFIRMED AND REMANDED.