John O'NEILL and Samuel R. Goodman, Appellants,

v.

**CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1998.
Decided April 17, 1998.

Andrew F. Mimnaugh, Philadelphia, for appellants.

Michael F. Eichert, Philadelphia, for appellee.

Before COLINS, President Judge, and KELLEY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

John O'Neill and Samuel R. Goodman (Appellants) appeal from the order of the Court of Common Pleas of Philadelphia County (trial court) granting summary judgment to the City of Philadelphia (City) and denying Appellants' motion for summary judgment. We affirm.

This case concerns the 1989 reorganization of the City's system for adjudicating parking violations. Until June 1, 1989, the Traffic Court of Philadelphia had original jurisdiction over parking violations.[1] Parking violations were summary offenses, criminal in nature. The police department notified Traffic Court of unpaid tickets; Traffic Court filed an information and generated a summons and, if the individual did not respond, issued a warrant for his or her arrest. Appeals from Traffic Court were taken to the Court of Common Pleas.

In 1989, the Philadelphia City Council enacted an ordinance that permitted the transfer of control over parking violations from Traffic Court to the Office of the Director of Finance. Under the new system, the recipient of a parking ticket has fifteen days to admit the violation and pay a fine or deny liability and request a hearing. Failure to do either results in the entry of a default order sustaining the charge and fixing the fine, costs and fees. If liability is denied, a hearing is held before a Bureau of Administrative Adjudication (BAA) hearing examiner, whose decision may be appealed to the BAA Parking Appeals Panel, and thereafter to the Court of Common Pleas. An adjudication of liability, either by default or following a hearing, creates a debt owed to the City.

The effect of the 1989 reorganization was to change the nature of parking violations from summary criminal offenses to civil violations. In practice, defendants in Traffic Court were entitled to three rights not available at a BAA hearing: 1) a disposition could not be made without the personal appearance of the defendant, 2) guilt had to be proved beyond a reasonable doubt, and 3) the two-year statute of limitations for summary offenses was in effect.

The ordinance created a period of dual jurisdiction over parking tickets, citations and summonses from Traffic Court issued between October 2, 1987 and June 1, 1989.

As of June 1, 1989, each Appellant had outstanding parking tickets that were issued in 1987, 1988 and 1989. Neither paid the fines or appeared in response to summonses issued by Traffic Court. In November of 1989, each Appellant received a "Violation Warning Notice" from the Office of the Director of Finance (ODF). The notice advised Appellants that the ODF would continue to pursue the listed unpaid parking violations and informed Appellants that they could elect to proceed either before Traffic Court or the BAA. Neither Appellant responded to the notice. Each subsequently received an

---

1. Sections 1302 and 1321 of the Judicial Code, 42 Pa.C.S. §§ 1302 and 1321.

Order of Default indicating that failure to pay the stated amount due could result in the City taking additional legal action against them.

On March 4, 1991, Appellant Goodman requested a hearing before the BAA with regard to a ticket he received in 1991. At the hearing, the BAA listed several additional tickets for disposition, including violations that occurred before June 1, 1989. Goodman's counsel objected to the inclusion of these tickets, arguing that Goodman had not consented to the BAA's jurisdiction over these tickets and that the statute of limitations had expired as to those tickets more than two years old. The hearing examiner overruled the objections, determined liability as to all tickets, and assessed a fine that included $173.00 for tickets issued before June 1, 1989. Goodman paid the amount due.

In April of 1991, Appellant O'Neill sought to have three tickets listed before Traffic Court, but was told it was no longer hearing parking violations. O'Neill obtained a hearing before the BAA, at which his counsel raised the same objection Goodman's counsel had raised. The hearing examiner overruled the objections, determined liability and assessed fines of $45.00, which O'Neill has not paid.

Neither Appellant appealed the hearing examiner's determination to the BAA Parking Appeals Panel or to the trial court, although they had the right to do so within thirty days of the hearing examiner's decision. Instead, they filed a class action in the United States District Court for the Eastern District of Pennsylvania, alleging violation of their rights under the United States Constitution and 42 U.S.C. § 1983, as well as violations of Pennsylvania state law. The District Court denied class certification and ordered the case to proceed as a constitutional test case.

Upon consideration of summary judgment motions filed by both parties, the District Court ruled in Appellants' favor only as to part of Count II of the Complaint. The District Court considered Counts III and IV of the Complaint, which raised claims under state law, as withdrawn without prejudice

and ruled in favor of the City on the remaining Counts.

Count II of the Complaint alleged a violation of Appellants' due process rights and the Constitution's limitation on *ex post facto* legislation based on the City's failure to obtain Appellants' consent to the BAA's jurisdiction as was required by the 1989 ordinance. The District Court found a violation of procedural due process, in that the City failed to adequately notify Appellants that failure to elect to proceed in Traffic Court resulted in their automatic consent to the jurisdiction of the BAA and the deprivation of the rights they would have had in Traffic Court, particularly the right to assert a statute of limitations defense. Accordingly, the District Court entered judgment in Appellants' favor on the amounts due or paid for violations that occurred prior to June 1, 1989.

On appeal, the Court of Appeals for the Third Circuit ordered that the judgment of the District Court be vacated and remanded the case with instructions to abstain under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and to dismiss Appellants' complaint. After the Supreme Court denied Appellants' petition for certiorari, Appellants transferred the case to the state trial court pursuant to Section 5103(b) of the Judicial Code, 42 Pa.C.S. § 5103(b). Following a hearing on the issue of class certification, the trial court denied certification and listed the case for argument on motions for summary judgment.

The trial court determined that Appellants had not established that the alleged violation of their due process rights occurred as a result of an official City practice, custom or policy, as is required to establish municipal liability. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Noting that the City's ordinance expressly prohibited the hearing examiners' decisions, the trial court determined that the hearing examiners erred in assuming jurisdiction over Appellants' pre–1989 tickets and that the City cannot be held liable for those mistakes. The trial court also observed that while the City did not warn Appellants that they might lose access to Traffic Court, the

City did provide them with an alternate procedure that is adequate under due process standards. Thus, the trial court concluded that Appellants at most suffered a deprivation of process—not property—without due process, which does not constitute a violation of their Constitutional rights.

The only issue before the trial court was the issue upon which the District Court had held in Appellants' favor, that is, whether the City violated Appellants' constitutional rights to due process under 42 U.S.C. § 1983 by failing to adequately notify them that by consenting to civil disposition of their unpaid parking tickets by the BAA, they would lose the right to assert the two-year statute of limitations defense in effect for summary criminal offenses in Traffic Court.

■ The parties agree that the transfer of jurisdiction from Traffic Court to the BAA in itself, is not a denial of due process, *Crane v. Hahlo*, 258 U.S. 142, 147, 42 S.Ct. 214, 215, 66 L.Ed. 514 (1922) ("No one has a vested right in any given mode of procedure; and so long as a substantial and efficient remedy remains or is provided, due process of law is not denied by a legislative change.") Furthermore, there is no constitutional right to assert a defense based upon a given statute of limitations. *See Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 311, 65 S.Ct. 1137, 1141, 89 L.Ed. 1628 (1945) ("In *Campbell v. Holt*, [115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885)], this Court held that where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar.") The enabling legislation [2] gave the Philadelphia Parking Authority all powers necessary or convenient for the administration, supervision and enforcement of an efficient system of on-street parking regulation and further provided that the exercise of any power provided should not be construed to constitute the prosecution of a summary offense under Sections 1301–1342 of the Judi-cial Code, 42 Pa.C.S. §§ 1301–1342 (relating to traffic courts).

■ There was, therefore, no constitutional or statutory bar to the city by ordinance from transferring the enforcement of all outstanding parking tickets on June 11, 1989 from Traffic Court to the BAA. Of course, this would convert summary offenses to civil violations, and eliminate the two-year statute of limitations defense for summary violations, but it would also eliminate arrest of the person and incarceration as remedies for unpaid parking tickets. Moreover, as pointed out by Judge Dalzell, (*O'Neill v. City of Philadelphia*, 817 F.Supp. 558, 565 (E.D.Pa. 1993)), such an ordinance would not constitute either a bill of attainder or an *ex post facto* law. We therefore hold that since the due process clause of the Fourteenth Amendment did not require the City to give any notice to parking ticket violators that it was eliminating the two-year statute of limitations defense for summary offenses, the allegedly inadequate notice given in this case was not a deprivation of due process.

■ Of course, Section 12–2807(8) of the ordinance enacted by the City did require the consent of the person contesting the violation to the jurisdiction of the Director of Finance, and such consent was not given by Appellants. The hearing officers were therefore in violation of the ordinance in ruling that Appellants were liable. But such violation under 42 U.S.C. § 1983 does not rise to the level of a deprivation of property without due process under the Fourteenth Amendment to the Constitution of the United States of America.

"To the extent plaintiffs say that Chicago's methods of commencing lawsuits violates state law, they should present their claims to state court. Federal courts do not enforce state law by characterizing violations of state law as offenses against the Constitution." *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1174 (7th Cir.1991) (citations omitted).

Judge Easterbrook stated in *Saukstelis* that collecting fines for parking in forbidden zones is hard to do. He pointed out that in *Sutton v. Milwaukee*, 672 F.2d 644 (7th Cir.

---

**2.** Section 5 of the Act of June 5, 1947, P.L. 458, *as amended*, 53 P.S. § 345(b)(17).

1982), the court, using a cost-benefit analysis approved by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), held that towing an illegally parked auto without prior notice is proper because the risk of error is small and the governmental need great. In *Saukstelis*, the court held that an illegally parked auto may be booted if the parking ticket itself offers an opportunity for a hearing. In both *Sutton* and *Saukstelis*, the appellants unsuccessfully claimed deprivation of their property without due process in violation of the Constitution.

■ Even if the failure of the City to notify Appellants that consenting to civil disposition of their unpaid parking tickets would cause them to lose the right to assert the two-year statute of limitations defense, violated their constitutional right to due process, they were not entitled to pursue their claim under 42 U.S.C. § 1983, without first exhausting state administrative and judicial remedies. *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995). In *National Private Truck Council*, the petitioners in a class action in an Oklahoma trial court, pursuant to state law and § 1983 sought declaratory and injunctive relief as well as refund of taxes paid and attorney's fees under state law and § 1988.

The Oklahoma Supreme Court held that retaliatory taxes imposed by the state on motor carriers violated the dormant Commerce Clause of the United State Constitution and awarded refunds under state law, but declined to award declaratory and injunctive relief under § 1983 and declined to award attorney's fees under § 1988 because adequate remedies existed under state law.

In affirming the Oklahoma court, the Supreme Court said:

> In determining whether Congress has authorized state courts to issue injunctive and declaratory relief in state tax cases, we must interpret § 1983 in light of the strong background principle against federal interference with state taxation. Given this principle, we hold that § 1983 does not call for either federal or state courts to award injunctive and declaratory relief in state tax cases when an adequate legal remedy exists. Petitioners do not dispute that Oklahoma has offered an adequate remedy in the form of refunds.

*Id.* at 589, 115 S.Ct. at 2355.

The same principle is applicable here. In this case, in directing the district court to abstain under *Younger v. Harris* and to dismiss Appellants' complaint, the circuit court said:

> [T]he Supreme Court's holding in Younger rested primarily on considerations of 'comity', a concept which encompasses 'a proper respect for state functions.' ... It would well nigh be impossible to overstate the point that the federal courts have no interest whatsoever in the underlying subject matter of this litigation—the City of Philadelphia has a vital and crucial interest in the functioning of a regulatory system, such as the one at issue here, which is intimately associated with the physical and financial workings of the city in general, and of the municipal government in particular.

*O'Neill v. City of Philadelphia*, 32 F.3d 785, 791–92 (3 rd Cir.1994).

Appellants here are seeking relief under § 1983 in the form of refunds and declaratory and injunctive relief, not only for themselves but for all others similarly situated, i.e., 2,713,975 persons with regard to over 3,000,000 undisposed of parking tickets, and are also seeking substantial attorneys' fees for legal services since 1991 under § 1988. Such relief is not available where Appellants have an adequate legal remedy.

■ Appellants had the right to appeal the decision of the hearing examiner to the BAA Parking Appeals Panel, 12 Phila. City Code § 12–2808, and the decision of the Parking Appeals Panel to the Court of Common Pleas, and then to this Court. Sections 751–754 of the Local Agency Law, 2 Pa.C.S. §§ 751–754. Appellants do not dispute that the error of the hearing examiners in overruling their statute of limitations defense could have been corrected on appeal, (R.R. 203a–204a), but nevertheless claim the remedy is inadequate because the legal expense involved in contesting a parking violation is

too great to make such appeals practical. Such argument ignores the financial burden and administrative problems that would be created for the city by granting the relief requested by Appellants. Further, the expense and inconvenience of pursuing the administrative remedy does not render the remedy inadequate. *See McGraw–Edison Co. v. Pennsylvania Human Relations Commission,* 108 Pa.Cmwlth. 147, 529 A.2d 81 (1987).

Accordingly, we affirm.

### ORDER

NOW, April 17, 1998, the order of the Court of Common Pleas of Philadelphia County, at No. 3444, dated May 7, 1997, is affirmed.

LEADBETTER, J., did not participate in the decision in this case.